❒ Original ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
records and Information associated with cellular device telephone assigned call number 262-515-1451 (Target Cell Phone), in custody or control of U.S. Cellular Corporation, see attachment A for more details

Case No. 25-961M(NJ)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ____________ District of ____________
*(identify the person or describe the property to be searched and give its location)*:

see Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 8/19/2025 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Nancy Joseph.
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ____________.

Date and time issued: 8/5/2025 @ 4:57 p.m.

Nancy Joseph
*Judge's signature*

City and state: Milwaukee, Wisconsin

U.S. Magistrate Judge Nancy Joseph
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________________________
*Executing officer's signature*

____________________________________
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1. Records and information associated with the cellular device assigned telephone number **262-515-1451**, referred to herein and in Attachment B as **Target Cell Phone**, believed to be used by Nelther ROGEL Batalla, that is in the custody or control of U.S. Cellular Corporation a service provider that is headquartered at 8410 W Bryn Mawr Ave, Ste 700, Chicago, IL 60631

2. The **Target Cell Phone**.

# ATTACHMENT B
## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the period from May 1, 2025, to present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone** or will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of **30 days**, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Nelther ROGEL Batalla and other unidentified subject(s) since May 2025.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by U.S. Cellular Corporation in order to locate the things particularly described in this warrant.

# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

records and Information associated with cellular device telephone assigned call number 262-515-1451 (Target Cell Phone), in custody or control of U.S. Cellular Corporation, see attachment A for more details

Case No. 25-961M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A

located in the ________ District of ________, there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 §§ 841(a)(1), 846, and 843 (b) | distribution & possession with intent to distribute controlled substances, conspiracy to distribute & possess with the intent to distribute controlled substances, & use of a communications facility to facilitate a drug-trafficking |

The application is based on these facts:

see attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SAMUEL WASMUND Digitally signed by SAMUEL WASMUND Date: 2025.08.04 11:34:02 -05'00'
*Applicant's signature*

DEA SA Samuel Wasmund
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 8/5/2025

[signature: Nancy Joseph]
*Judge's signature*

City and state: Milwaukee, WI

Nancy Joseph
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Samuel Wasmund, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **262-515-1451 (Target Cell Phone).** The **Target Cell Phone's** service provider is U.S. Cellular Corporation ("Service Provider"), a wireless telephone service provider headquartered at 8410 W Bryn Mawr Ave, Ste 700, Chicago, IL 60631.

2. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. The listed subscriber for the **Target Cell Phone** is Susan L Siler at 6013 55th Street Apartment 104, Kenosha, WI 53144. **Target Cell Phone** is used by Nelther ROGEL Batalla aka "Nene" (hereafter referred to as "ROGEL").

3. In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

4. I am employed as a Special Agent with the Drug Enforcement Administration (DEA) and am currently assigned to the Milwaukee District Office. I have been employed by the DEA since October 2015. I am a Criminal Investigator or Law Enforcement Officer of the United Staes within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses. Since my employment with the DEA, I have conducted investigations dealing with complex

international drug trafficking and money laundering conspiracies. I have further training and experience in advanced undercover operations, complex international drug trafficking conspiracies, the use of the internet, electronic media, social media, cellular devices, and cellular applications for violations of Title 21.

5. As a DEA Special Agent, I have managed confidential sources (CSs), worked in an undercover capacity, conducted surveillance, arrested suspects, executed search and arrest warrants, seized evidence, prepared investigative reports, and interviewed suspects. I have been involved in controlled substance investigations that have utilized court authorized Title III intercepts of wire and electronic communications. I have consulted with other agents and prosecuting attorneys in matters dealing with the enforcement of the Controlled Substance Act and as a result, have gained considerable experience in the investigation of drug traffickers, drug trafficking organizations, and money laundering organizations working on behalf of drug traffickers. In sum I have experience in criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.

6. I have conducted complex international and domestic drug trafficking investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses.

7. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the

use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8. The facts in this affidavit come my personal participation in this investigation, and my review of: (a) contemporaneous drug related conversations between a confidential source (CS) and ROGEL; and (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

9. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

10. Based on the facts set forth in this affidavit, there is probable cause to believe that the crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b), have been committed by ROGEL and other known and unknown individuals. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## JURISDICTION

11. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

12. Since June of 2025, the DEA has been coordinating with the Kenosha Police Department (KPD), Special Investigations Unit (SIU) regarding an investigation of the drug trafficking activities of ROGEL, and other, currently unidentified, individuals that are known to be involved in the distribution of methamphetamine and cocaine in the Kenosha, Wisconsin area.

### A. Background

13. In May of 2025, investigators with the KPD SIU conducted an interview of a confidential source (CS), who identified ROGEL as someone that is involved in the distribution of methamphetamine and cocaine in Kenosha, WI. The CS admitted that he/she used to be a user of methamphetamine and that it was ROGEL that was supplying him/her with methamphetamine that s/he was subsequently consuming. The CS identified the **Target Cell Phone** as the telephone number being used by ROGEL to coordinate for the distribution of the aforementioned drugs. Additionally, the CS informed case agents that ROGEL resides at 6007 55th Street, Kenosha, WI 53144, and that this location is frequently used by ROGEL for the distribution of drugs.

14. On July 15, 2025, case agents conducted a follow up interview with the CS, who again confirmed that ROGEL continues to be involved in the distribution of methamphetamine and cocaine in the Kenosha, WI area. The CS confirmed that ROGEL continues to use the **Target Cell Phone** and confirmed that the **Target Cell Phone** is used by ROGEL to coordinate the

distribution of methamphetamine and cocaine. The CS stated that ROGEL currently believes that law enforcement has been conducting surveillance at his (ROGEL's) address, and that ROGEL is very surveillance conscious. The CS showed case agents conversations that s/he previously had with ROGEL over the WhatsApp account associated with **Target Cell Phone**. An example of these conversations between ROGEL and the CS (translated from Spanish to English) is set forth below:

Starting at **May 14, 2025; 7:44 PM**:

CS: Good afternoon brother hey do you think you can do me the favor with the 1/8th and I will pay you for it on Friday dude with no issues since I don't have any more and if you cant dude even if it is just a 50 let me know brother sorry

ROGEL: I am in Rockford I arrive around 11

CS: Okay

15. Based upon my training, experience, and the investigation to date, in the above referenced conversation between the CS and ROGEL, the CS contacted ROGEL on May 14, 2025, and asked ROGEL if ROGEL could provide the CS with an eighth, which I know is code in reference to a 1/8th ounce quantity of methamphetamine. The CS continued and informed ROGEL that s/he did not currently have money, but if ROGEL could not provide the eighth that if ROGEL could at least provide a "50," which is code in reference to a $50 quantity of methamphetamine. However, in response, ROGEL informed the CS that s/he was currently in Rockford and that he (ROGEL) would not be back until around "11," which is believed to be a reference to 11:00 p.m., since this conversation began around 7:44 p.m. The CS stated that ROGEL appears to frequently travel to Rockford, Illinois, and suspected that ROGEL could be supplied with drugs by an unidentified individual located in Rockford.

16. On June 20, 2025, the DEA served US Cellular Corporation (US Cellular) with an administrative subpoena requesting information related to the **Target Cell Phone.** On June 26, 2025, US Cellular responded with the requested information, which revealed that the **Target Cell Phone** is registered to Susan L Siler at 6013 55th Street Apartment 104, Kenosha, WI 53144. Open source queries reveal that 6013 55th Street, Kenosha, WI is part of the Arbor Green Apartments Complex, which is a series of apartment buildings, which share common entrances and parking lots. Case agents have previously observed ROGEL exit the building at the Arbor Green Apartments Complex associated with 6007 55th Street, Kenosha, WI.

17. Of note, Susan SILER has been identified by case agents as ROGEL's significant other. Further, the primary address listed on the data from US Cellular, is the known address for Arbor Green Apartments, where ROGEL is known to reside. This is the same apartment complex that the CS identified as ROGEL's current residence.

18. On July 17, 2025, I coordinated with the Wisconsin Department of Corrections (DOC), and obtained a jail call that occurred on January 14, 2025, between the **Target Cell Phone** and WI DOC inmate "Angel Pena Alberto Berrios" (hereafter referred to as "PENA") I have reviewed this call, which was conducted in Spanish, and I am a fluent Spanish speaker. In this jail call, a Spanish speaking male answered the **Target Cell Phone**. Through extensive experience with Spanish, I know that the Spanish speaking male has a Mexican accent. Case agents know that ROGEL is originally from Mexico. It is believed that ROGEL is the speaker who is heard speaking to PENA. In summary, PENA requested that ROGEL deposit money for PENA's commissary account. Finally, during this telephone call ROGEL informed that he has been without work for a while now, and that it is difficult to find a job that pays well. ROGEL claimed to be taking classes to obtain his General Equivalency Degree, commonly referred to as a GED.

19. Based upon the information provided by the CS, the subpoenaed US Cellular records, and the above referenced jail call, case agents believe that ROGEL is the user of the **Target Cell Phone**. Further, through training and experience, I know that it is common for drug distributors to utilize cellular telephones that are registered under aliases and/or the names of other individuals. At times this is done to thwart potential law enforcement scrutiny.

20. For several reasons, case agents believe that the CS is reliable and credible. First, CS has been providing continuous information since May of 2025. Second, the information CS has provided is substantially against CS's penal interest. Third, the information provided by CS is consistent with evidence obtained elsewhere in this investigation where CS was not utilized and CS's information has been corroborated by independent investigation. CS does not have any prior adult criminal convictions and is cooperating for potential consideration on state possession of methamphetamine charges and potential immigration benefits. Finally, CS has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein. For these reasons, case agents believe the CS to be reliable.

21. Based on the above, I believe that the requested data for **262-515-1451 (Target Cell Phone)** to include prospective precision location data, will assist in locating ROGEL, and will aid in identifying any drug "stash" locations frequented by ROGEL, currently unidentified co-conspirators with whom ROGEL is involved in drug distribution (customers, co-conspirators, sources of supply, etc.)

## TECHNICAL BACKGROUND

22. Case agents believe the **Target Cell Phone** whose service provider is U.S. Cellular Corporation (Service Provider), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of

possession of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b).

23. Based on my training and experience, I know that U.S. Cellular Corporation can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on U.S. Cellular Corporation' network or with such other reference points as may be reasonably available.

**A. Cell-Site Data**

24. In my training and experience, I have learned that U.S. Cellular Corporation is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

25. Based on my training and experience, I know that U.S. Cellular Corporation can collect cell-site data on a historical and prospective basis about the **Target Cell Phone.** Based on

my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as U.S. Cellular Corporation typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

26. I know that some providers of cellular telephone service, including U.S. Cellular Corporation have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

27. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

28. I also know that certain wireless providers, such as U.S. Cellular Corporation, can provide precision location information, also known as estimated location records or historical

handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

29. Based on my training and experience, I know that U.S. Cellular Corporation also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

30. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that U.S. Cellular Corporation can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on U.S. Cellular Corporation' network or with such other reference points as may be reasonably available.

**C. Subscriber Information**

31. Based on my training and experience, I know that wireless providers such as the U.S. Cellular Corporation typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that

wireless providers such as the U.S. Cellular Corporation typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

**AUTHORIZATION REQUEST**

32. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

33. I further request that the Court direct the U.S. Cellular Corporation to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

34. I also request that the Court direct the U.S. Cellular Corporation to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the U.S. Cellular Corporation' services, including by initiating a signal to determine the locations of the **Target Cell Phone** on U.S. Cellular Corporation' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate U.S. Cellular Corporation for reasonable expenses incurred in furnishing such facilities or assistance.

35. Because the warrant will be served on U.S. Cellular Corporation, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

## ATTACHMENT A
**Property to Be Searched**

1. Records and information associated with the cellular device assigned telephone number **262-515-1451**, referred to herein and in Attachment B as **Target Cell Phone**, believed to be used by Nelther ROGEL Batalla, that is in the custody or control of U.S. Cellular Corporation a service provider that is headquartered at 8410 W Bryn Mawr Ave, Ste 700, Chicago, IL 60631
2. The **Target Cell Phone**.

# ATTACHMENT B
## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the period from May 1, 2025, to present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone** or will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of **30 days**, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Nelther ROGEL Batalla and other unidentified subject(s) since May 2025.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by U.S. Cellular Corporation in order to locate the things particularly described in this warrant.